# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

MATTHEW WILLIAMS, JR.                                             PETITIONER


v.                               NO. 5:16-cv-00007 JM/PSH


WENDY KELLEY, Director of the                                   RESPONDENT
Arkansas Department of Correction


## FINDINGS AND RECOMMENDATION


### INSTRUCTIONS


The following proposed Findings and Recommendation have been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

FINDINGS AND RECOMMENDATION

I. STATE PROCEEDINGS. The record reflects that in September of 2008, counterfeit checks were passed at convenient stores in Pike County, Arkansas. See Document 23, Exhibit A at CM/ECF 15. The checks were drawn on a general fund maintained by the City of Nashville, Arkansas. See Id. Local law enforcement authorities conducted an investigation into the passing of the checks, and they eventually identified petitioner Matthew Williams, Jr., ("Williams") as one of the individuals passing one or more of the checks. See Id.

In November of 2008, Williams was charged in Pike County, Arkansas, Circuit Court with forgery in the first degree in violation of Ark. Code Ann. 5-37-201. See Document 23, Exhibit A at CM/ECF 13-14. Williams initially retained an attorney, but counsel withdrew when he was not paid for his services. See Id. at CM/ECF 8, 19, 32-34, 115-117. When Williams was unable to retain another attorney, the state trial court judge appointed LaJeana Jones ("Jones") to represent Williams. See Id. at CM/ECF 119-121. Jones represented Williams until the day of the trial, at which time Williams discharged Jones, and Williams began representing himself. See Id. at CM/ECF 171-183. The state trial court judge permitted Williams to represent himself only after ensuring that he knew the consequences of choosing to proceed without counsel. See Id. The state trial court judge did, though, appoint Jones to serve as stand-by counsel for Williams. See Id. at CM/ECF 183.

Williams was tried in December of 2012. See Document 23, Exhibit A at CM/ECF 10. While the jury was deliberating his guilt, he absconded. See Id. at CM/ECF 371-373. After the jury convicted Williams of forgery in the first degree, the state trial court judge re-appointed Jones to represent Williams during the punishment phase of the trial. See Id. at CM/ECF 373. The jury heard evidence relevant to Williams' punishment, including evidence that he had a number of prior felony convictions. See Id. at CM/ECF 376-379. The jury sentenced him as an habitual offender to a term of forty years in the custody of respondent Wendy Kelley ("Kelley"). See Id. at CM/ECF 385-387.[1] The state trial court judge did not impose sentence at that time but instead waited until Williams was apprehended. See Id. at CM/ECF 387-388. Williams was eventually apprehended and appeared before the state trial court judge in April of 2013 for sentencing. See Id. at CM/ECF 391-398. The state trial court judge imposed the sentence recommended by the jury, and Williams was placed in Kelley's custody. See Id.

Williams appealed his conviction. During the course of the appeal, Jones was relieved as Williams' attorney of record, and Jeff Weber ("Weber") was appointed to represent Williams. The Arkansas Court of Appeals found no reversible error and affirmed Williams' conviction. See Williams v. State, 2014 Ark.App. 454, — S.W.3d —, 2014 WL 4459116 (2014).

---

[1]

The sentencing order did not initially reflect that Williams was sentenced as an habitual offender. It was subsequently amended to correct the error. See Williams v. State, 2014 Ark.App. 454, — S.W.3d —, 2014 WL 4459116 (2014).

Williams then filed a state trial court petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37 ("Rule 37 petition"). The petition was denied, see Document 23, Exhibit D at CM/ECF 37-40, and he appealed. The Arkansas Supreme Court found no grounds for disturbing Williams' conviction, and the court affirmed the denial of his petition. See Williams v. State, 2015 Ark. 466, 476 S.W.3d 800 (2015).

II. FEDERAL PROCEEDINGS. Williams began this case by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. In the petition, he raised the following claims: 1) Jones failed to challenge an erroneous jury instruction, 2) Jones failed to interview any witnesses, 3) Jones failed to challenge the admission of certified copies of the counterfeit checks, 4) Weber failed to challenge the sufficiency of the evidence, and 5) Weber failed to challenge the admission of certified copies of the checks.[2] Williams later amended his petition and raised the following claims: A) Jones failed to communicate the terms of a plea bargain, B) Williams was denied counsel at trial, C) he was denied counsel during the Rule 37 hearing, and D) he was denied a fair and impartial jury.

Kelley filed a lengthy response to the petition. In the response, she maintained that the petition should be dismissed with prejudice because the claims contained in the petition were reasonably adjudicated by the state courts of Arkansas, are procedurally barred from federal court review, are without merit, or are otherwise unavailing.

---

[2]

Two of the claims appear to be grounded solely on state law. A violation of state law typically does not warrant habeas corpus relief. The undersigned assumes, though, that a due process violation may occur if an erroneous jury instruction or erroneous admission of evidence causes a fundamental defect resulting in a complete miscarriage of justice or so infects the trial as to deprive the defendant of a fair trial.

Williams filed a reply to the response. Williams maintained that the adjudication made of his claims by the state courts of Arkansas was entitled to no deference. With respect to his claims not adjudicated by the state courts of Arkansas, he maintained that the claims are not procedurally barred from federal court review but have merit.

III. <u>INEFFECTIVE OF COUNSEL</u>. Jones represented Williams up to the day of trial. Williams represented himself at trial, but Jones was re-appointed to represent Williams during the punishment phase. Weber was then appointed to represent Williams on direct appeal. As Williams' first six claims, he challenges the representation they afforded him.

Some of Williams' six claims were considered by the Arkansas Supreme Court. To the extent they were, they are governed by 28 U.S.C. 2254(d), which requires a two-part inquiry. It requires an inquiry into whether the court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; and whether the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

All of Williams' six claims are governed by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which requires its own two-part showing. He must show that counsel's performance fell below an objective standard of reasonableness, and he must show prejudice, <u>i.e.</u>, a reasonable probability that, but for counsel's errors, the result of the trial would have been different. <u>See</u> <u>White v. Dingle</u>, 757 F.3d 750 (8th Cir. 2014). Taken together with 28 U.S.C. 2254(d), <u>Strickland v. Washington</u> establishes a doubly deferential standard of review. <u>See</u> <u>Williams v. Roper</u>, 695 F.3d 825 (8th Cir. 2012).

A. <u>Jones' failure to challenge an erroneous jury instruction</u>. At the close of the evidence, the jurors were read an instruction allegedly conforming to Arkansas Model Jury Instruction (Criminal) ("AMCI") 3702. The instruction provided, in part, that "the written instrument so drawn, made, completed, altered, counterfeited, possessed, or uttered was a check, an instrument issued or appears to be issued by a government or government entity." <u>See</u> Document 23, Exhibit A at CM/ECF 66, 356. AMCI 3702, though, does not contain the phrase "appears to be issued." Williams maintains that Jones erred when she failed to challenge the instruction on that ground.

Williams raised his claim in his Rule 37 petition. The state Supreme Court rejected the claim, finding the following:

> Williams first argues that the trial court erred by not granting relief on his claim that his pretrial counsel [<u>i.e.</u>, Jones] was ineffective for not contesting an erroneous jury instruction. He contends counsel should have objected on the basis that the jury instruction defining the offense of forgery did not mirror the exact language in the forgery statute in that the instruction stated that the check was a written instrument that was issued or "appears to be issued" by the government or a government entity, but the statute does not contain the words "appears to be issued."
>
> While Williams is correct that the forgery statute … does not contain the words in question, we cannot say that the trial court erred in denying postconviction relief on the issue under the <u>Strickland</u> standard. First, counsel testified at the Rule 37.1 hearing that she attempted to review the jury instructions with Williams, but he informed her that he could read and did not need her help. At trial, when Williams was representing himself, he did not object when the jury instructions were read to the jury. The right of self-representation carries the responsibility for one's own mistakes, and a defendant who elects to represent himself cannot thereafter complain that the quality of his self-representation amounted to a denial of effective assistance of counsel. …

> Moreover, even if pretrial counsel failed to point out to Williams the difference in the wording between the statute and the jury instruction or if counsel, acting as stand-by counsel, could have suggested that Williams object to the jury instruction, Williams did not show that the difference in the wording was sufficient to change the outcome of the trial. Without a showing of a reasonable probability that the fact-finder's decision would have been different absent an error by counsel, Williams did not establish that he was prejudiced by any error by his pretrial counsel. …

See <u>Williams v. State</u>, 476 S.W.3d at 804.

The state Supreme Court's adjudication of Williams' claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The court applied clearly established federal law as announced in <u>Strickland v. Washington</u>, and the court's decision is neither contrary to or involved an unreasonable application of that law.

The state Supreme Court's adjudication of Williams' claim also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The court could and did credit Jones' testimony during the Rule 37 hearing that she attempted to review the jury instructions with Williams while serving as stand-by counsel during the trial, but he told her that he could read and did not need her help. <u>See</u> Document 23, Exhibit D at CM/ECF 89-90. Moreover, Williams was representing himself when he could have, and should have, objected to the instruction, and he bore the consequences of failing to object. There is also no evidence of prejudice, <u>i.e.</u>, there is no evidence the instruction was so prejudicial as to change the outcome of the trial.

B. <u>Jones' failure to interview witnesses</u>. Williams' claim is built upon two assertions. First, law enforcement authorities obtained video footage showing two men passing some of the counterfeit checks. The authorities eventually identified Williams as one of the men in the video. Williams maintains that three days before trial, he gave Jones a list of witnesses who would testify that Williams was not one of the men in the video. Williams maintains that Jones never interviewed the witnesses. Williams additionally maintains that Jones erred when she failed to interview Chris Turner ("Turner"), who was allegedly one of the other men in the video.

Second, two of the convenience store clerks who accepted counterfeit checks testified at trial. <u>See</u> Document 23, Exhibit A at CM/ECF 246-259, 305-317. The clerks identified Williams as one of the perpetrators. Williams maintains that the clerks changed their stories over time, and it was only at trial that they conclusively identified Williams as one of the perpetrators. Williams maintains that Jones erred when she failed to interview the clerks prior to trial.

Williams raised his second claim in his Rule 37 petition. The state Supreme Court rejected the claim, finding the following:

> Williams's next point for reversal of the order concerns his assertion that pretrial counsel [<u>i.e.</u>, Jones] did not contact witnesses for the defense. He claims there were multiple witnesses, but he specifically names only Chris Turner. Williams alleges that Turner's testimony would have been vital to the defense because Turner was shown in video footage with Williams passing a forged check, making him an "unindicted co-conspirator."
>
> …

> Here, Williams did not demonstrate a reasonable probability that the outcome of the trial could have been different had Turner testified. Williams did not set out in his Rule 37.1 Petition or at the hearing on the petition, and he does not explain in his brief in this appeal, what testimony Turner would have offered had he been called as a witness. Two store clerks testified that they were sure that Williams was the person who had passed the forged checks to them. Even if Turner were in the video with Williams, the onus was on Williams to state what Turner would have said at trial that would have affected the outcome of the trial. As Williams did not meet the threshold requirement of setting out how the defense was prejudiced by pretrial counsel's failure to secure the testimony of Turner or any other witness, he did not show that counsel was remiss. …

See Williams v. State, 476 S.W.3d at 806.

The state Supreme Court's adjudication of Williams' claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The court applied clearly established federal law as announced in Strickland v. Washington, and the court's decision is neither contrary to or involved an unreasonable application of that law.

The state Supreme Court's adjudication of Williams' claim also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The court could and did find that save Turner, Williams failed to identify the witnesses who would have testified on his behalf and failed to provide a summary of their testimony. In fact, in Williams' reply to Kelley's response, Williams acknowledges that he did not "personalize the name and testimony of [the] witnesses." See Document 25 at CM/ECF 3. It is true that Williams identified Turner as a witness, but Williams acknowledges in the same reply that "[Williams] has never stated specifically

what Turner's testimony might be but has always believed it would be exculpatory." See Document 25 at CM/ECF 5. It is also worth observing that Williams called a witness at trial who testified Williams was not one of the men in the video. See Document 23, Exhibit A at 342-351. Assuming that Turner would have testified that Williams was not one of the men in the video, Turner's testimony would have been cumulative and added little, if any, to his defense. Given such representations, Williams has not demonstrated a reasonable probability that the outcome of the trial would have been different had Turner been called to testify.

Assuming that the undersigned can consider Williams' claim regarding Jones' failure to interview the convenience store clerks, there is no evidence of prejudice. Williams cross-examined the clerks at trial about their prior statements and how the clerks came to be certain of Williams' participation in passing the counterfeit checks. See Document 23, Exhibit A at 251-256, 312-317. It was for the jury to weigh the clerks' credibility, and the jury obviously chose to credit the clerks' testimony.

C. Jones and Webers' failure to challenge the admission of the certified copies of the counterfeit checks. The State did not introduce the counterfeit checks at trial; instead, the State introduced certified copies of the checks. Williams maintains that Jones should have challenged the admission of the copies at trial. Williams additionally maintains that Weber should have, but failed, to raise the same claim on direct appeal.

Williams raised the two claims in his Rule 37 petition. The state Supreme Court rejected the claims, finding the following:

Williams next contends that the trial court erred with respect to his claim that pretrial counsel [i.e., Jones] should have filed a motion to suppress the admission of copies of the forged checks. He further argues that posttrial counsel [i.e., Weber] was ineffective because counsel did not raise the issue of the admissibility of the checks on appeal and failed to argue that there was reversible error at trial because the State did not introduce the original checks into evidence.

As to pretrial counsel's failure to object to the admission of the checks into evidence, Williams represented himself when the checks were admitted into evidence, and he did, in fact, object on the basis that the checks were copies rather than original documents. As the objection was made, Williams did not establish that pretrial counsel was remiss.

With respect to whether appellate counsel was ineffective for failing to raise the issue of admissibility of the checks on appeal and failing to argue that the checks introduced into evidence were copies of the original checks, Williams did not meet his burden of showing that counsel failed to raise a meritorious issue on appeal. … Williams presented no argument to demonstrate that the issue of either the admissibility of the checks or the introduction of copies of the checks into evidence was an issue on which he would have prevailed on appeal.

Testimony at trial established that, pursuant to bank policy, the original checks were destroyed after ninety days and that certified copies of the forged checks were returned to the convenience stores and given to law-enforcement investigators. Under Arkansas Rule of Evidence 1003 (2013), a duplicate is held to be admissible to the same extent as the original unless a genuine question is raised to authenticity of the duplicate or where it would be otherwise unfair to admit the duplicate. Williams did not show that there was any basis on which the trial court erred in holding that the duplicate checks were admissible or any basis on which appellate counsel could have raised a meritorious argument on appeal concerning the admissibility of the duplicate checks. Again, the petitioner who claims that appellate counsel was ineffective bears the burden of making a clear showing that counsel failed to raise some meritorious issue on appeal. An attorney is not ineffective merely because he did not raise every argument on appeal, regardless of merit, urged by his client. …

See Williams v. State, 476 S.W.3d at 805.

The state Supreme Court's adjudication of Williams' claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The court applied clearly established federal law as announced in Strickland v. Washington, and the court's decision is neither contrary to or involved an unreasonable application of that law.

The state Supreme Court's adjudication of Williams' claim also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The court could and did find that Williams was representing himself when the certified copies of the counterfeit checks were admitted into evidence, and he was responsible for objecting to their admission. Although he objected to their admission, the state trial court judge overruled the objection. Given those facts, it cannot be said that Jones committed any error when the checks were admitted over Williams' objection while she was serving as stand-by counsel.

On direct appeal, Weber did not challenge the admission of the certified copies of the counterfeit checks. He did not err when he failed to do so. The state Supreme Court could and did find that the checks were destroyed after ninety days pursuant to bank policy, and certified copies of the checks were provided to law enforcement authorities and eventually admitted into evidence. As the court could and did find, Williams has not shown how the state trial court judge erred by admitting the certified copies or any basis on which Weber could have challenged their admission

-12-

while representing Williams on direct appeal.

    D. <u>Weber's failure to challenge the sufficiency of the evidence</u>. The State called a witness during the trial who testified that Williams was one of the men in the video. During cross-examination, the witness mentioned that Williams had previously been incarcerated. Williams did not make a motion for mistrial at that time but waited until the State rested. The state trial court judge denied the motion. On direct appeal, Weber raised only one claim, <u>i.e.</u>, the trial court judge erred when he denied Williams' motion for a mistrial. Weber did not challenge the sufficiency of the evidence, and Williams maintains that Weber erred when he failed to raise the claim.

    Kelley maintains that Williams' claim is procedurally barred from federal court review. Rather than enter the morass of the procedural bar issue, the undersigned will reach the merits of the claim. In doing so, the undersigned notes that sufficient evidence supports a conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>See</u> <u>Garrison v. Burt</u>, 637 F.3d 849 (8th Cir. 2011). <u>See</u> <u>also</u> <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).

    Viewing the evidence in the light most favorable to the State, <u>see</u> Document 23, Exhibit A at CM/ECF 235-315, the undersigned finds that the evidence of Williams' guilt is substantial. A bank employee testified that the checks presented to the convenience stores were drawn on a City of Nashville, Arkansas, account but were "fraudulent" checks. <u>See</u> <u>Id</u>. at CM/ECF 237. Two convenient store clerks testified

that they accepted the counterfeit checks and identified Williams as one of the men who passed the checks. See Id. at CM/ECF 246-250, 305-312. Still photographs were taken from the video, and a witness who had known Williams for most of his life testified that Williams was one of the men in the video. See Id. at CM/ECF 281-285. Given this testimony, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Assuming Weber committed error by failing to challenge the sufficiency of the evidence, no prejudice resulted because the claim lacked merit.

E. Jones' failure to communicate the terms of a plea bargain. Williams next maintains that Jones failed to communicate the terms of a plea bargain. In support of the claim, Williams alleges the following:

> … [Williams] was informed by pre-trial counsel [i.e., Jones] of a plea bargain. The plea agreement required [Williams] to plead no-contest to … Class C Forgery and accept 3 years in the A.D.C. with 2 years suspended. Also, [he] would be allowed to remain in society until after the new year. On December 5, 2012, [Williams] e-mailed pre-trial counsel and informed her of his acceptance of the offer. Counsel responded to [the] e-mail and expressed her opinion that [Williams] was making a wise choice. The next morning, [Williams] arrived for court, fully expecting to plead no-contest and accept the terms of the plea. For unbeknownst reasons, the state changed the terms of the plea. [He] was told to accept 3 years in the A.D.C. and surrender immediately. Pre-trial counsel had not informed [Williams] of this "new deal." [Williams] has no idea as to when the state decided to change the terms. In court, pre-trial counsel stood silent as opposed to voicing an objection or making [a] record to the trial court. … Ultimately, [Williams] was found guilty and sentenced to serve 40 years in the A.D.C. [He] informed the trial court of the e-mails exchanged [with counsel]. … [P]re-trial counsel produced a document purportedly e-mailed by [Williams]. The document

was not the one [he] sent and [was] obviously meant to mis-lead the
court.

See Document 10 at CM/ECF 23-24.

Kelley maintains that Williams' claim is procedurally barred from federal court review. Rather than enter the morass of the procedural bar issue, the undersigned will reach the merits of the claim. In doing so, the undersigned recognizes that Missouri v. Frye, — U.S. —, 132 S.Ct. 1399, 182 L.E.2d 379 (2012), extended the Sixth Amendment right to effective assistance of counsel to the consideration of plea offers.

Having reviewed the record, the undersigned finds that Williams' claim has no merit because he cannot show an error on Jones' part. The undersigned so finds for two reasons.

First, it is not clear what the State's offer was. Williams maintains that the offer was for three years with two years suspended and the right to remain free until the turn of the new year. He maintains that if allowed to pursue discovery, he could locate an e-mail attesting to those terms.[3] Assuming such an e-mail exists, it would appear to have been from Jones to Williams, not from the State to Jones or Williams. It is true that Jones thought the offer was as Williams maintains, see Document 23,

---

[3]

During the Rule 37 hearing, Williams offered as an exhibit an e-mail he wrote to Jones in which Williams purported to accept "the plea of 3 years with 2 suspended" and requested "at least 60 days or an ADC assignment prior to confinement." See Document 23, Exhibit D at CM/ECF 106.

Exhibit D at CM/ECF 85, but her testimony is not a model of clarity in that regard. Specifically, Jones was not clear whether the State was agreeable to Williams remaining free until the turn of the new year. In short, the undersigned has no way of knowing if the State offered the terms Williams alleges.

Second, notwithstanding the foregoing, the plea bargain was never accepted by the state trial court judge and subsequently embodied in the judgment of the court. See Mabry v. Johnson, 467 U.S. 504 (1984) (plea bargain standing alone is without constitutional significance; it is mere executory agreement which, until embodied in judgment of court, does not deprive an accused of liberty or other constitutionally protected interests); Caldwell v. State, 295 Ark. 149, 747 S.W.2d 99 (1988) (under Arkansas law, plea bargain is not enforceable and has no legal effect until accepted by trial court judge).[4] The State thus had the right to withdraw the offer, and its attorney could properly represent that there was "no deal." See Document 23, Exhibit A at 182.

F. Conclusion. "There is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy." See Amrine v. Bowersox, 238 F.3d 1023, 1030 (8th Cir. 2001). Williams has failed to show that his attorneys' representation fell outside that range.

---

[4]

In Caldwell v. State, the Arkansas Supreme Court recognized that a plea bargain not yet accepted may be enforceable if the defendant relied to his detriment on the offer. As Kelley correctly notes, no such reliance occurred here. Williams took no action or failed to take an action in expectation of pleading guilty. He did not decide to accept the offer until the night before the trial was scheduled to begin.

IV. <u>WILLIAMS WAS DENIED COUNSEL AT TRIAL AND WAS DENIED A FAIR AND</u>

<u>IMPARTIAL JURY</u>. It was not until the day of the trial that Williams notified the state

trial court judge of Williams' inability to work with Jones and his lack of trust in her.

After the state trial court judge recounted the opportunities he had given Williams to

retain counsel of his own choosing, <u>see</u> Document 23, Exhibit A at CM/ECF 177-178,

the state trial court judge gave Williams the option of either having Jones continue to

serve as counsel or proceed without counsel, which the state trial court judge

"strongly advise[d] against," <u>see</u> <u>Id</u>. at CM/ECF 178. Williams elected to represent

himself. He now maintains that his Sixth Amendment right to counsel was violated

because he was "forced to proceed <u>pro</u> <u>se</u>." <u>See</u> Document 10 at CM/ECF 30.

Once Williams elected to represent himself, the state trial court judge began

the jury selection process. <u>See</u>  Document 23, Exhibit A at CM/ECF 184-224. Williams

maintains that during the process, he was given only sixty seconds in one instance to

decide whether to seat a juror. Williams maintains that he depleted his peremptory

strikes during the process and was unable to strike a juror allegedly related to one of

the witnesses. Williams also maintains that he was unable to strike a juror who

allegedly dined at some point with the state trial court judge. It is for the foregoing

reasons that Williams maintains that the jury selection process denied him a fair and

impartial jury.

Kelley maintains that Williams' claims of a denial of the right to counsel at trial

and the denial of the right to a fair and impartial jury are procedurally barred from

federal court review. Although the undersigned bypassed the procedural bar issue in the context of Williams' claims of ineffective assistance of counsel, the undersigned will not do likewise with respect to his claims of a denial of the right to counsel at trial and the denial of the right to a fair and impartial jury.[5]

Generally, the federal courts will not consider a claim if the petitioner failed to first present it to the state courts in accordance with the state's procedural rules. See Wainwright v. Sykes, 433 U.S. 72 (1977). There are, though, exceptions to the rule. A claim can be considered if the petitioner can show cause for his procedural default and actual prejudice or, alternatively, show that the failure to consider the claim will result in a fundamental miscarriage of justice because he is actually innocent. See Wallace v. Lockhart, 12 F.3d 823 (8th Cir. 1994).

Williams' claims of a denial of the right to counsel at trial and the denial of the right to a fair and impartial jury were not properly raised in, or addressed by, the state courts of Arkansas. Accordingly, the undersigned finds that Williams did not properly present the claims to the state courts in accordance with the state's procedural rules. He therefore procedurally defaulted the claims, and the question is whether his procedural default can be excused or otherwise overlooked.

Williams offers as cause Weber's ineffective representation. Specifically, Williams maintains that Weber should have raised on direct appeal Williams' claims of

---

[5]

The undersigned does so because of the special consideration given claims of ineffective assistance of counsel. See Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012).

a denial of the right to counsel at trial and the denial of the right to a fair and impartial jury.

Ineffective assistance of counsel can, in certain limited circumstances, serve as cause for a procedural default. For instance, ineffective assistance of post-conviction counsel can excuse the procedural default of a "substantial claim of ineffective assistance of counsel at trial." See Martinez v. Ryan, 566 U.S. —, 132 S.Ct. 1309, 1320, 182 L.E.2d 272 (2012) ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."). Ineffective assistance of counsel cannot, though, excuse the procedural default of other claims.[6]

In this instance, Williams offers appellate counsel's ineffective representation

---

[6]

    A number of cases stand for the proposition that ineffective assistance of post-conviction counsel can only serve as cause for the procedural default of a claim of ineffective assistance of counsel at trial and cannot serve as cause for the procedural default of any other claim. See e.g., Dansby v. Hobbs, 766 F.3d 809 (8th Cir. 2014), cert. denied sub nom., Dansby v. Kelley, — U.S. —, 136 S.Ct. 297, 193 L.Ed.2d 46 (2015) (ineffective assistance of counsel cannot serve as cause for the procedural default of a claim of ineffective assistance of appellate counsel); Slocum v. Kelley, 2015 WL 1789027 (E.D.Ark. 2015) (Martinez only applies to ineffective assistance of trial counsel claims and is not extended to ineffective assistance of appellate counsel claims). See also Hunton v. Sinclair, 732 F.3d 1124 (9th Cir. 2013) (Martinez does not permit resuscitation of a procedurally defaulted Brady claim); Myers v. State of Tennessee, 2016 WL 1230740 (M.D.Tenn. 2016) (Martinez only applies to a defaulted claim of ineffective assistance of trial counsel and does not apply to a claim that the state suppressed exculpatory evidence); Young v. Colson, 2015 WL 4879117 (M.D.Tenn. 2015) (Martinez only allows for ineffective assistance of post-conviction counsel to establish cause for the default of claims of ineffective assistance of trial counsel; petitioner's claims of, inter alia, conflict of interest, double jeopardy, erroneous jury instructions, and juror misconduct are claims not arising from alleged ineffective assistance of trial counsel and are therefore outside scope of Martinez).

as cause for the procedural default of Williams' claims of a denial of the right to counsel at trial and the denial of the right to a fair and impartial jury. The undersigned knows of no authority to support such a proposition; specifically, the undersigned knows of no authority to support the proposition that ineffective assistance of appellate counsel will excuse the procedural default of non-ineffective assistance of trial counsel claims. Martinez v. Ryan does not support such a proposition. The undersigned therefore finds that Williams can show no cause for the procedural default of his two claims.

Williams alternatively maintains that the failure to consider his claims of a denial of the right to counsel at trial and the denial of the right to a fair and impartial jury will result in a fundamental miscarriage of justice because he is actually innocent. Although not true cause for a procedural default, a showing of actual innocence can serve as a gateway through which a petitioner can obtain federal court review of a procedurally barred claim. See Schlup v. Delo, 513 U.S. 298 (1995). The petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. See Id. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." See Id. at 327. Here, Williams has failed to make the requisite showing as he has failed to produce "new evidence of factual innocence." See Niederstadt v. Nixon, 505 F.3d 832, 840 (8th Cir. 2007) (Colloton, J., concurring). He simply re-argues the evidence he

knew, or should have known, of at the time of his trial.

V. <u>WILLIAMS WAS DENIED COUNSEL DURING THE RULE 37 HEARING</u>. Williams last maintains that he was denied counsel during the Rule 37 hearing. Kelley maintains, in response, that there is no constitutional right to counsel in state post-conviction proceedings. The undersigned agrees. Even after <u>Martinez v. Ryan</u>, there is no right to counsel in a state post-conviction proceeding. His claim is therefore without merit.

VI. <u>RECOMMENDATION</u>. It is recommended that Williams' petition be dismissed, all requested relief be denied, and judgment be entered for Kelley. It is also recommended that a certificate of appealability be denied.

DATED this 13th day of June, 2016.

_____
UNITED STATES MAGISTRATE JUDGE